IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **OHIO CIVIL RIGHTS COMMISSION,** | CASE NO. 3:22 CV 608 |
| Plaintiff, | |
| v. | JUDGE JAMES R. KNEPP II |
| **TG TOLEDO, LLC, et al.,** | MEMORANDUM OPINION AND ORDER |
| Defendants. | |

### INTRODUCTION

Currently pending before the Court in this removed action is Plaintiff Ohio Civil Rights Commission's ("OCRC") Motion to Remand (Doc. 10). Defendants TG Toledo, LLC, the Tobin Group, LLC, and Group Five Management Company oppose (Doc. 11), and Plaintiff replied (Doc. 12).

For the following reasons, the Court GRANTS the Motion to Remand.

### BACKGROUND

The OCRC originally filed this suit in the Lucas County Court of Common Pleas pursuant to Ohio Revised Code § 4112.055(A)(2)(b) against TG Toledo, LLC; TG Toledo, LLC A Michigan Limited Liability Company; The Tobin Group, LLC; and Group Five Management Company. (Doc. 1-1). The OCRC asserted Defendants owned or managed an apartment complex in Toledo, Ohio, at which Complainant Lorene Biglow resided as a renter. *Id.* at ¶¶ 3-4, 24. It asserts Biglow had an emotional support animal, and requested an accommodation based thereon when she entered into the original lease in July 2017; Defendants granted the accommodation. *Id.* at ¶ 25. After renewing her lease in June 2018, Biglow requested an accommodation for a

second service animal, presenting physician's notes for the first animal, second animal, and both animals simultaneously. *Id.* at ¶¶ 26-28. Defendants denied this request, based on a policy only permitting one emotional support animal at a time. *Id.* at ¶ 29. They charged Biglow a pet deposit for her second animal and monthly pet fees. *Id.* at ¶ 30. The Complaint further asserts on information and belief that Defendants applied their one emotional support animal policy against other tenants as well. *Id.* at ¶ 32.

Biglow filed a charge with the OCRC in October 2018, alleging disability discrimination. *Id.* at ¶ 10. OCRC determined there was probable cause to believe Defendants had discriminated on the basis of disability in violation of Ohio Revised Code § 4112.02(H). *Id.* at ¶¶ 12-16. In September 2019, the OCRC issued its administrative complaint, and in February 2022, OCRC authorized the Attorney General to file suit. *Id.* at ¶¶ 17-19.

The Complaint asserts two Counts: (1) failure to permit a reasonable accommodation for a disabled person under Ohio Revised Code § 4112.02(H)(19), and (2) unlawful conduct pursuant to Ohio Revised Code § 4112.02(H)(12). *Id.* at ¶¶ 23-27. The prayer for relief requests: (1) a determination that Defendants violated Ohio Revised Code § 4112.02(H)(19), (12), and Ohio Admin. Code § 4112-5-07(C); (2) an order that Defendants cease and desist from all unlawful discriminatory practices; (3) an order for training in the Ohio Laws Against Discrimination in Housing for all members of Defendants' management and staff; (4) Defendants to pay Biglow's damages suffered as a result of Defendants' violations of Ohio Revised Code Chapter 4112; (5) punitive damages pursuant to Ohio Revised Code § 4112.055(D); and (6) attorney fees and costs incurred in the prosecution of the action. *Id.* at 8-9.

STANDARD OF REVIEW

A civil case brought in a state court may be removed by a defendant to federal court only if it could have been brought there originally. 28 U.S.C. § 1441(a). A federal district court has original "diversity" jurisdiction where "the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs" and the suit is between "citizens of different states." 28 U.S.C. § 1332(a). The removing defendant has the burden of proving these diversity jurisdiction requirements are met. *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921); *Paul v. Kaiser Found. Health Plan of Ohio*, 701 F.3d 514, 520 (6th Cir. 2012).

The Court must resolve all doubts regarding propriety of removal in favor of the non-removing party. *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999); *see also Her Majesty The Queen v. City of Detroit*, 874 F.2d 332, 339 (6th Cir. 1989) ("The removal petition is to be strictly construed, with all doubts resolved against removal.").

DISCUSSION

In moving to remand, Plaintiff asserts Defendants have not satisfied their burden to prove either requirement for diversity jurisdiction: diversity of the parties, or an amount in controversy in excess of $75,000. The Court finds Defendants have not satisfied their burden to establish the amount in controversy requirement is met and remand is required.

Amount in Controversy

Defendants must "demonstrate by a preponderance of the evidence that the amount in controversy exceeded $ 75,000 at the time of removal" to establish subject matter jurisdiction. *Nowicki-Hockey v. Bank of Am., N.A.*, 593 F. App'x 420, 422 (6th Cir. 2014). Defendants must "affirmatively come forward with competent proof showing that the amount-in-controversy

3

requirement is satisfied" by a preponderance of the evidence. *King v. Household Fin. Corp. II*, 593 F. Supp. 2d 958, 959 (E.D. Ky. 2009).

In the Notice of Removal, Defendants cite the Complaint's request for monetary damages for Ms. Biglow, punitive damages, and attorneys' fees. They further assert the value of the declaratory judgment should also be considered. Taking these things together, Defendants assert they have satisfied their burden to demonstrate the amount in controversy exceeds $75,000.

*Actual Damages*

Plaintiff contends Biglow's individual damages amount to a $25 monthly pet fee for ten months, a one-time pet deposit of $150, and $500 for moving services when she moved out. Plaintiff further asserts Biglow is now paying less monthly rent elsewhere and therefore her total monetary damages are less than $1,000. *See* Doc. 10, at 11; *see also* Doc. 8-1 at 2 (OCRC Discrimination Charge listing $150 pet deposit and $25 monthly fee). Defendants do not contest this description, but state "Plaintiff's Motion is silent as to additional actual damages traditionally sought by aggrieved parties", without further elaboration. (Doc. 11, at 8).

*Prior Settlement Negotiations*

Both parties also cite prior settlement demands. Court have permitted consideration of such demands determining the amount in controversy. *See, e.g.*, *Russell v. McKechnie Vehicle Components USA, Inc.*, 2011 WL 3847501, at *1 (E.D. Ky.) (stating that "District Courts across the Sixth Circuit have held that a demand letter can be 'relevant evidence of the amount in controversy' if the demands 'reflect [ ] a reasonable estimate of the plaintiff's claim'") (collecting cases).

Defendant asserts at the time of conciliation, Biglow made a demand for $100,000.00. (Doc. 11, at 9 n.3). Plaintiff notes the most recent demand for settlement to Defendants before litigation (in November 2021) was for $9,000, citing an email from counsel. (Doc. 10-1).

As another court explained, there are "two schools of thought with respect to settlement demands" – on the one hand, "[t]he demand might be significantly more than the case is actually worth", and on the other hand, "parties routinely offer and accept settlement amounts significantly below the total amount placed in controversy by the case in order to avoid the risks that accompany a trial." *Smith v. Phillips & Jordan, Inc.*, 2011 WL 250435, at *2 (E.D. Ky.) (quoting *Hollon v. Consumer Plumbing Recovery Ctr.*, 417 F. Supp. 2d 849, 854 (E.D. Ky. 2006) (further quotation omitted).

This suit was filed in state court in March 2022. The Court finds that – to the extent settlement demands are relevant to the amount in controversy – such a demand made close-in-time to the filing of a suit is more indicative of (though not dispositive of) the true amount in controversy.

*Costs of Injunctive/Declaratory Relief*

Defendants further contend the "amount in controversy" includes the cost/value of any declaratory or injunctive relief: "Here, the consequences of the litigation would impact the Defendants' ability to manage, rent, and establish reasonable fees for a second or more pet(s) where tenants have not offered any support for a second or more emotional support animal(s)." (Doc. 1, at 5) (citing *Freeland v. Liberty Mut. Fire Ins. Co.*, 632 F.3d 250, 253 (6th Cir. 2011) ("[T]his Court has said that, where a party seeks a declaratory judgment, the amount in controversy is not necessarily the money judgment sought or recovered, but rather the value of the consequences which may result from the litigation.") (internal citation and quotation

omitted)); *see also Cleveland Hous. Renewal Project v. Deutsche Bank Trust Co.*, 621 F.3d 554, 560 (6th Cir. 2010) ("In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation.") (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977)).

Plaintiff responds: (1) any such costs are *de minimis*, and (2) the costs of eliminating an illegal practice should not be considered in determining the amount in controversy. It is Defendants' burden to establish the amount in controversy. Beyond stating that these costs should be considered, they have provided no specific detail regarding these costs such as the cost to change their service animal policy, the number of tenants likely covered, or the cost of any additional training. Although perhaps not completely zero, the Court cannot find Defendants have established the amount in controversy as it pertains to the declaratory or injunctive relief sought in this case is significant.

*Attorney Fees & Punitive Damages*

"When determining the jurisdictional amount in controversy in diversity cases, punitive damages must be considered . . . unless it is apparent to a legal certainty that such cannot be recovered." *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 572 (6th Cir. 2001) (quoting *Holley Equip. Corp. v. Credit All. Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987) (citations omitted). Further, although generally "attorneys' fees are excludable in determining the amount in controversy for purposes of diversity", they may be considered "where a statute mandates or expressly allows the payment of such fees." *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 376 (6th Cir. 2007); *see also Clark v. Nat. Travelers Life Ins. Co.*, 518 F.2d 1167, 1168 (6th Cir. 1975) ("It is settled that the statutory penalty and a statutory attorney's fee can be considered in determining whether the jurisdictional amount is met."). Ohio Revised Code § 4112.055(D)

x

provides for attorney fees and permits an award of punitive damages if a Court or jury finds a violation of § 4112.02(H).

Plaintiff asserts, citing Ohio Revised Code § 4112.05(G)(b)[1], it does not intend to seek more than $10,000 in punitive damages. Defendant accepts this "undisputably may be considered when determining the amount in controversy." (Doc. 11, at 8). Given this, the Court accepts $10,000 in punitive damages should be considered in the amount-in-controversy calculation.

Defendants argue "while [they] are not privy to Plaintiff's exact attorneys' fees and costs, it cannot be disputed that the cost of civil litigation, inclusive of initial pleadings, discovery, motion practice, and the possibility of trial, can surely result in significant fees and costs." (Doc. 11, at 9).

Although the Court agrees both punitive damages and attorneys' fees may be properly considered here, *see* Ohio Rev. Code § 4112.055(D), it finds Defendants have not established these amounts – even taken together and in addition to the other amounts sought – are more likely than not to exceed $75,000.

*Total Amount-in-Controversy*

Taken together, the Court finds Defendants have not satisfied their burden to establish federal jurisdiction.[2] That is, they have not demonstrated it is more likely than not that Plaintiff's

---

1. Ohio Revised Code § 4112.05(G)(b) provides for a civil penalty of up to $10,000 if the Commission determines there has been a violation of Ohio Revised Code § 4112.02(H).

2. In its Reply brief, Plaintiff for the first time states that it "is willing to stipulate that Plaintiff will seek less than $75,000 in total damages in this matter." (Doc. 12, at 9). In a footnote, it notes that "Defendants never told Plaintiff they would seek removal, so the issue of a stipulation never previously arose." *Id.* at 9 n.5. Under Sixth Circuit jurisprudence, "a post-removal stipulation *reducing* the amount in controversy to below the jurisdictional limit does not require remand to state court." *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 872 (6th Cir. 2000) (emphasis added). However, where a plaintiff "provides specific information about the amount in controversy *for the first time*" after removal to federal court, *Heyman v. Lincoln*

approximately $1,000 in monetary damages, no more than $10,000 in punitive damages, and any attorneys' fees and additional costs will exceed $75,000.

Because "all doubts" must be "resolved against removal", *Her Majesty The Queen*, 874 F.2d at 339, and Defendant has not established by a preponderance of the evidence that the amount in controversy in this case exceeds $75,000, the Court finds remand is required.

<u>Other Arguments</u>

Because the Court finds the amount in controversy threshold not met, it need not reach Plaintiff's other arguments – regarding diversity of citizenship – in favor of remand. The Court further cannot address any argument presented regarding the timeliness or validity of Plaintiff's initial complaint because it lacks jurisdiction to do so.

CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Plaintiff's Motion to Remand (Doc. 1) be, and the same hereby is, GRANTED; and it is

FURTHER ORDERED that this matter be REMANDED to the Lucas County Court of Common Pleas.

   s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

---

*Nat'l Life Ins. Co.*, 781 F. App'x at 463, 469 (6th Cir. 2019) (citing *Shupe v. Asplundh Tree Expert Co.*, 566 F. App'x 476, 481 (6th Cir. 2014)), a plaintiff's stipulation "is not deemed a postremoval change in the prayer for relief but merely a *clarification* of the plaintiff's intent." *Id.* at 470. Because as set forth above, the Court finds Defendants have not satisfied their burden of establishing the amount in controversy exceeds $75,000, the Court need not wade into the thornier issue of whether such an offer to stipulate – in a Reply brief – would be sufficient to defeat federal jurisdiction.